NANCY ALLEN, Respondent, v. GEORGE · H.
LEACH and GUY ELSTON, Appellants.

**Kansas City Court of Appeals, November 23, 1914.**

1. NEGLIGENCE: Damages: Mining Fellow Servant Law. In à
suit by a widow for her husband's death alleged to have been
caused by defendant's employee, who was a fellow servant with
deceased at the time of the accident, the fact that the death
was caused by the alleged careless act of a fellow servant relieves
defendant of liability unless the evidence shows that the de-
ceased and the fellow servant were engaged in the work of
"operating a mine producing lead, zinc, coal or other valuable
minerals" within the meaning of Sec. 5440, R. S. 1909, which
abolishes the fellow servant rule in such instances.

2. ———: ———: ———: Evidence. Defendants were not
miners nor mine operators. Desiring to seek for coal under
certain land which they ·controlled, they employed deceased
and his fellow servant to sink the hole in which they were
working at the time deceased was killed. Several other holes
had been sunk elsewhere on the land but without success in
finding a mine. The hole in which the accident occurred was
only about twenty feet in depth and no coal had been found
therein nor was any ·ever found thereafter. *Held,* that defend-
ants were not "operating a mine producing coal" as specified
in the statute. The wording of the statute is peculiar, so precise
in its meaning that the Legislature must be held to have clearly
intended that the act should apply only to cases where there
was an actual mine and not to the mere efforts of a landowner
in hunting for one.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,*
Judge.

REVERSED.

*Irwin & Peters* for appellants.

The court should instruct the jury to find a verdict
for the defendant when plaintiff fails to offer any
proof whatever to sustain the allegations in the peti-
tion. R. S. Mo. 1909, sec. 5440; Madden v. Railroad,

149 Mo. App. 143; Hensly v. Stix; 113 Mo. App. 162; Smith v. Pullman Co., 138 Mo. App. 238; Canady v. U. Railways Co., 134 Mo. App. 282; Compton v. Railroad, 147 Mo. App. 414; Adams v. Railroad, 149 Mo. App. 278; Chamlee v. Planters Hotel Co., 155 Mo. App. 624; Haynor v. Light, Heat and Power Co., 129 Mo. App. 691; Smith v. Fordyce, 190 Mo. 1.

*Pope & Lohman* for respondent.

(1) A mine is defined to be an underground excavation made for the purpose of getting minerals; a pit or excavation in the earth from which metallic ores or other mineral substances are taken by digging. 27 Cyc. 531; 5 Words & Phrases, page 4511; Coleman v. Coleman, 1 Pears (Pa.), 470-474; Coal Mining Co. v. Grogan, 53 Ill. App. 60-65; Wharton's Law Dictionary, Mine, p. 489. (2) The dual capacity doctrine by which an employee may be vice-principal while performing one portion of his duties and a fellow servant while performing another portion, obtains in Missouri. Bien v. St. Louis Transit Co., 108 Mo. App. 399; McIntyre v. Tebbetts, 140 Mo. App. 116; Madden v. Railroad, 167 Mo. App. 143. (3) An employee does not assume the danger arising from another's negligent conduct, and need not presume that other workmen will be negligent. Hutchison v. Safety Gate Co., 247 Mo. 71; Madden v. Railroad, 167 Mo. App. 143; Hoover v. Western Coal & Mining Co., 160 Mo. App. 326.

TRIMBLE, J.—Respondent sued to recover damages for the alleged negligent death of her husband. The petition charges that deceased was in the employ of appellants engaged in operating a mine producing coal and other minerals and that while in such employ her husband was killed by the negligence of a fellow servant working with him in the common service of appellants.

In order to escape the effect of the common-law fellow servant doctrine, respondent relies upon section 440, Revised Statutes 1909, which provides that "every person, company or corporation operating a mine or mines in this State producing lead, zinc, coal or other valuable minerals, shall be liable for all damages sustained by any agent or servant thereof while engaged in operating such mine or mines, by reason of the negligence of any other agent or servant thereof." This abolishes the fellow servant law as to every employer coming within its terms. The controlling question in the case is as to the applicability of that statute to this case.

Deceased and one Elias Wilhite were employed by appellants to sink a hole on their land in the work of prospecting for coal. In prosecuting this work the two had sunk a hole about twenty feet in depth. On the day deceased was killed he was engaged in digging up the earth at the bottom of this hole and putting it in a large tub which when filled, would be hoisted to the top by his fellow servant, Wilhite, by means of a rope and windlass. This rope was attached to the bail of the tub by means of a "pigtail" hook, so called because in form it suggested a pig's tail, the end or point of the hook curving over to the lower part or bend thereof. When the tub reached the top, it was Wilhite's duty to secure the tub and, after disengaging it from the hook, to empty the tub and then rehook it to the rope and, after warning the man below, to lower the tub to the bottom. On the day in question, Wilhite had emptied the tub and rehooked it to the rope and, after giving the warning, was lowering the tub to the bottom when in some way the bail of the tub came off the hook and the tub fell striking respondents husband upon the head and killing him.

As said before, the controlling question is whether section 5440 applies to the facts of this case.

Appellants were not miners nor mine operators. They had an interest in and controlled certain land, and, desiring to seek for coal thereunder, employed the two men to sink the hole in question. Several other holes of varying depths had been sunk elsewhere upon this land but without success in finding a mine. The hole in which the accident occurred was only about twenty feet in depth and no coal had been found therein nor was any ever found thereafter. In other words, appellants were not "operating a mine *producing* coal or other minerals" as specified and required in the statute. They were merely looking for a coal mine but had not found it and never did find one.

The wording of the statute is peculiar. It does not say "every person engaged in mining or in mining operations" but "every person operating a mine or mines *producing lead, zinc, coal or other valuable minerals,* etc." And throughout the act such person is referred to as "so operating *such* mine or mines." The language used in the act is so precise in its meaning that the Legislature must be held to have clearly intended that the act should apply only to cases where there was an actual mine and not to the mere efforts of a landowner in hunting for one. There was no difference between the work being done in this case and the sinking of an ordinary well by a farmer except the purpose existing in the mind of the one having the work done. If the Legislature had intended the act to apply to a case of this kind it would doubtless have used more comprehensive language. It is well within reason that the law making power thought it wise to restrict the scope of the act to a mine after it has been found rather than to include in its terms the mere work of prospecting or looking for a mine. The dangers to life and limb arising from the *operation* of a mine where many persons are likely to be engaged and in which the safety of all depends upon the care of each was the thing the Legislature had in mind in enact-

ing the statute. We do not say that when a mine has been found and opened minerals must be actually in process of being derived therefrom before it will come within the terms of the statute. But we do say that in view of the wording of the statute it does not apply to a state of facts such as is presented in the case at bar. This holding necessarily goes to the vitals of the case. Consequently it is unnecessary to pass upon the interesting question of whether there was any evidence whatever of negligence upon the part of the fellow servant. The judgment is reversed. All concur.